IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GALEN R. HUSTON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | 05-mc-104 |
| | ) | |
| THE UNITED STATES, MBNA, AMERICAN | ) | FILE[ |
| EXPRESS, CITIBANK, USA, and BANK ONE/ | ) | |
| JP MORGAN | ) | AUG - 8 |
| | ) | |
| | ) | U.S. DISTRICT COURT |
| Respondents. | ) | DISTRICT OF DELAWARE |

**RESPONSE OF PETITIONER TO UNITED STATES' RESPONSE
TO THE PETITION TO QUASH SUMMONS, UNITED STATES'
MOTION FOR SUMMARY DENIAL OF PETITION TO QUASH &
SUMMARY ENFORCEMENT OF SUMMONS, MEMORANDUM IN
SUPPORT OF UNITED STATES' MOTION FOR SUMMARY
DENIAL OF PETITION TO QUASH & SUMMARY
ENFORCEMENT OF SUMMONS AND DECLARATION OF CARLA
GAMBONI**

Petitioner, GALEN R. HUSTON, hereby files the following additional
claims in support of petition to quash summons and responds to the
aforementioned responses, motions, memorandum in support and declaration
of Carla Gamboni filed by Department of Justice (DOJ) attorney Jennifer L.
Best (hereinafter alleged duly authorized DOJ attorney) for the alleged
United States.

Jurisdiction

     Petitioner declares that the only third party over whom the Petitioner has established privity and personal jurisdiction by this action in the USDC in Delaware is MBNA. This is due to it being its home office state. Petitioner is a resident of Georgia and therefore a duly authorized agent purporting to represent MBNA relative to a fiduciary responsibility toward the petitioner, would be required to comply with *Lex Loci* of Georgia. This is in regards to trover, trespass, larceny of trust by an employee, or through a registered agent of MBNA with the Secretary of State of Georgia. Statutory and common laws of Georgia have jurisdiction and duty to protect the property and right to peaceful ownership of property of the Petitioner.

The requisites for enforcement of a Federal summons

    All of the arguments and claims made by the DOJ attorney are without merit and have no legal basis in fact, standing or evidence. The reason is that the instant action as set forth in the sworn Declaration of Revenue Agent Carla (Crosby) alias Gamboni (hereinafter named Agent alias Gamboni) does not meet the requisites for enforcement of a summons in Powell, 379 U.S. at 57-58. Assuming arrguendo, said facts of Agent alias Gamboni were proven by evidence in the record by her testimony that petitioner is in fact a statutory defined "taxpayer" by U.S. Congressional legislation. Still the following conditions precedent are required by Constitutional due process of the First, Fourth, Fifth, Sixth, Seventh and Eighth amendments of the Federal Constitution and Constitution of the State of Georgia and are to be met:

2

**A.  Agent alias Gamboni has failed to disclose evidence in the record**
**that** determines Galen R. Huston is a taxpayer as defined by FOREIGN
FEDERAL STATUTORY law.  See 26 USCS  Sec. 7701 (a) 14 and 1313
(b),which defines the statutory term of art, "Taxpayer".

It must be unequivocally established by Agent alias Gamboni,  that
verified facts,  Federal statutes, supporting legislative regulations, by the
preponderance of the evidence,  that Petitioner is clearly and unmistakably
defined and classified as a taxpayer as defined by federal law.

Agent alias Gamboni is required to show relevancy to the Petitioner by
(FRE 401 AND 5 USCS 556(d) pursuant to legislative regulations published
in the Federal Register, the Federal APA, Paperwork Reduction Act,
Regulatory Flexibility Act, and the Federal Register Act that she has
complied with these laws by authentication of such testimony (FRE Rule
901) with the seal of her office pursuant to 1 USC Sec. 201, 26 USC Sec.
7514, 26 CFR 301.7514, Treasury Directive 25-01 March 24, 1999
concerning Authentication of Department of the Treasury Documents, IRM
MANUAL 11.3.6 Seals and Certification, and Treasury Delegation Order
198. certifying her testimony and evidence is what she purports it to be
regarding the Petitioner.  Agent alias Gambani has failed to show evidence
on the record that she has complied with these requirements.

It has been said in United States Court of Claims, **Economy Plumbing and Heating**
**v. United States,** 470 F.2d 585, at 589 (1972) that. *"The revenue laws are a code or*
*system in regulation of tax assessment and collection. They relate to taxpayers, and not to*
*nontaxpayers. The latter are without their scope."*

Agent alias Gamboni failed to provide or prove in evidence for the record
that her written correspondence and alleged summons to MBNA employees
is with legal justification to override the petitioner's fundamental right to

3

privacy and be left alone.  SEE- <u>Katz v. United States, 389 U.S. 347, 350-351 (88</u>
<u>S. Ct. 507, 19 L. Ed. 2d 576) (1967),</u> where the Court opined that the protection of
a person's general right to privacy, i.e., the right to be left alone, was left
largely to the individual States.


PRIVACY=LIBERTY INTEREST:  Citing POWELL v THE STATE
270 GA. 327, (1998)
*The right of privacy has a long and distinguished history in Georgia. In 1905, this*
*Court expressly recognized that Georgia citizens have a "liberty of privacy"*
*guaranteed by the Georgia constitutional provision which declares that no person shall*
*be deprived of liberty except by due process of law.* Quoting the following.

<u>Pavesich v. New England Life Ins Co., 122 Ga. 190, 197 (50 S.E. 68) (1905).</u> The
Pavesich decision constituted the first time any court of last resort in this country
recognized the right of privacy **(Katz, *The History of the Georgia Bill of Rights,* 3 GSU**
**L. Rev. 83, 118 (1986);** <u>Gouldman-Taber Pontiac v. Zerbst, 213 Ga. 682 (100 S.E.2d</u>
<u>881) (1957),</u> making this Court a pioneer in the realm of the right of privacy, <u>Bodrey v.</u>
<u>Cape, 120 Ga. App. 859, 866 (172 S.E.2d 643) (1969).</u>

**See also** <u>Cox Broadcasting Corp. v. Cohn, 231 Ga. 60 (200 S.E.2d 127) (1973),</u> rev'd <u>420</u>
<u>U.S. 469 (95 S. Ct. 1029, 43 L. Ed. 2d 328) (1975),</u> **where this Court proudly noted**
**that the right of privacy "was birthed by this court" in Pavesich.**

 Since that time, the Georgia courts have developed a rich appellate jurisprudence in the
right of privacy which recognizes the right of privacy as a fundamental **[***7]**
constitutional right, "having a value so essential to individual liberty in our society that
[its] infringement merits careful scrutiny by the **[**22]** courts." <u>Ambles v. State, 259</u>
<u>Ga. 406 (2) (b) (383 S.E.2d 555) (1989).</u>

**In Pavesich, the Court found the right of privacy to be "ancient law," with "its**
**foundation in the instincts of nature[,]" derived from "the Roman's conception of**
**justice" and natural law, making it immutable and absolute.** <u>122 Ga. at 194.</u>

 **The Court described the liberty interest derived from natural law** as "embracing the
right of man to be free in the enjoyment of the faculties with which he has been endowed
by his Creator, subject only to such restraints as are necessary for the common good."
<u>122 Ga. at 195.</u>

*[*8]* "Liberty" includes "the right to live as one will, so long as that will does not interfere
with the rights of another or of the public" ( <u>id. 122 Ga. at 196),</u> and the individual is
"entitled to a liberty of choice as to his manner of life, and neither an individual nor the
public has the right to arbitrarily take away from him his liberty." <u>122 Ga. at 197.</u>

The Pavesich Court further recognized that the **[\*330]** "right of personal liberty" also embraces "the right to withdraw from **[\*\*\*8]** the public gaze at such times as a person may see fit, when his presence in public is not demanded by any rule of law. . . ." Id. Stated succinctly, **the Court ringingly endorsed the "right 'to be let alone'** so long as [one] was not interfering with the rights of other individuals or of the public." Id. n2

## SEARCH
**The Court saw the right of persons to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures as an "implied recognition of the existence of a right of privacy. . . ." 122 Ga. at 198-199.**

## COURT CASES
**In the ensuing years since Pavesich was decided and Georgia's right of privacy recognized, the Georgia appellate courts have expounded on the right of privacy, describing it as protection for the individual from unnecessary public scrutiny (** Athens Observer v. Anderson, 245 Ga. 63 (263 S.E.2d 128) (1980)); **as the right of the individual "to be free from . . . the publicizing of one's private affairs with which the public has no legitimate concern" (** Gouldman-Taber Pontiac [\*\*\*9] v. Zerbst, supra, 213 Ga. at 683); **"the right to define one's circle of intimacy" (Macon-Bibb County Water &c.** Auth. v. Reynolds, 165 Ga. App. 348, 350 (299 S.E.2d 594) (1983)); **and the right "to be free of unwarranted interference by the public about matters [with] which the public is not necessarily concerned, or to be protected from any wrongful intrusion into an individual's private life which would outrage ... a person of ordinary sensibilities."** Georgia Power Co. v. Busbin, 149 Ga. App. 274 (6) (254 S.E.2d 146) (1979).

**This Court has determined that a citizen's right of privacy is strong enough to withstand a variety of attempts by the State to intrude in the citizen's life.**

In Zant v. Prevatte, 248 Ga. 832 (286 S.E.2d 715) (1982), the Court ruled that the State's assertion of a duty to protect a prisoner's health and its interest in preserving human life did not amount to the compelling state interest which could **override a sane state prisoner's refusal to eat or submit to medical treatment for the effects of starvation.** In State of Georgia v. McAfee, 259 Ga. 579 (385 S.E.2d 651) (1989), the Court again ruled that a citizen's constitutional right of privacy **[\*\*\*10]** and liberty under which he refused medical treatment was not outweighed by any interest the State might have in the preservation of life.

In Harris v. Cox Enterprises, 256 Ga. 299, 302 (348 S.E.2d 448) (1986), Georgia's strong public policy in favor of open government was required to bend in favor of the individual's right of privacy when matters about which the public had no legitimate concern were at issue. It is clear from the right of privacy appellate jurisprudence which emanates from Pavesich that the "right to be let alone" guaranteed by the Georgia Constitution is far more extensive that the right of privacy protected by the U.S. Constitution, which protects only those matters "deeply rooted in this Nation's history and tradition" [*331] or which are "implicit in the concept of ordered liberty. . . ." Bowers v. Hardwick, 478 U.S. 186, 191-192 (106 S. Ct. 2841, 92 L. Ed. 2d 140) (1986). n3

Thus, a state court may interpret a state constitutional provision as affording more protection to citizens than have the federal courts in interpreting a parallel provision of the federal constitution. See Creamer v. State, 229 Ga. 511 (3) (192 S.E.2d 350) (1972).

## COURT DECISIONS=GA CONSTITUTION V Fed=greater Protection

On several fronts, the Georgia Constitution has been construed as providing greater protection to its citizens than does the federal constitution.

State v. Miller, 260 Ga. 669 (398 S.E.2d 547) (1990) (Georgia Constitution provides broader protection than the First Amendment); Green v. State, 260 Ga. 625 (398 S.E.2d 360) (1990) (Georgia Constitution grants a broader right against self-incrimination than the federal constitution); Fleming v. Zant, 259 Ga. 687, 690 (386 S.E.2d 339) (1989) (Georgia Constitution provides a more extensive guarantee against cruel and unusual punishment than does the federal constitution); Colonial Pipeline Co. v. Brown, 258 Ga. 115 (3) (365 S.E.2d 827) (1988) (Georgia Constitution's excessive fines clause is more expansive than the Eighth Amendment); D. B. v. Clarke County Bd. of Ed., 220 Ga. App. 330 (1) (469 S.E.2d 438) (1996) (Georgia Constitution's guarantee of a free education is broader than that provided by the U.S. Constitution). See also Grissom v. Gleason, 262 Ga. 374, n. 1 (418 S.E.2d 27) (1992), where this Court observed that Georgia's equal protection clause might be interpreted to offer greater rights than the equal protection clause found in the federal constitution.

Georgia is not alone in providing its citizens with a broader right of privacy than that provided by the federal constitution.

OTHER STATES=PRIVACY
Appellate courts in Montana ( Gryczan v. State, 283 Mont. 433, 942 P.2d 112 (Mont.

1997)); Tennessee ( Campbell v. Sundquist, 926 S.W.2d 250 (Tn. App. 1996);

Kentucky ( Commonwealth v. Wasson, 842 S.W.2d 487 (Ky. 1993)); Texas (Texas

State Emp. Union v. Dept. of Mental Health &c., 746 S.W.2d 203 (Tex. 1987)); and

New Jersey ( State v. Saunders, 75 N.J. 200, 381 A.2d 333 (N.J. 1977)), have all

interpreted the right of privacy guaranteed by their respective state constitutions as being

more extensive than that provided by the U.S. Constitution.


Agent alias Gamboni failed to provide or prove in evidence for the record

that a warrant from a foreign court of competent jurisdiction located in

Delaware or domestic Georgia was issued compelling agents or employees

to seize and transfer property of Petitioner to Agent alias Gamboni.  A

person's name, cloths, papers, personal effects as well as real property

belongs to him/her.  Such property may not be dispossessed from him/her

without a court order and trial, or by his voluntary consent .   Anything

short of a lawful warrant from a Court of competent jurisdiction showing

probable cause is a Common Law trespass cognizable in a State of the Union

as a Tort.  This means against anyone including public employees in their

individual capacity as there is no immunity for individual *ultra vires acts*.  It

is well recognized in America Jurisprudence that artificial entities such as

governments cannot legally commit torts and crimes against its citizens.


Plaintiffs' memorandum in support for the Constitutional requirements  must

be met before a search and seizure of Petitioner's property be taken without

his consent:

### The Fourth Amendment's Plain Language

The Fourth Amendment essentially (1) provides that particularized warrants shall be
issued only upon probable cause supported by oath or affirmation, and (2) protects
against unreasonable searches and seizures. The amendment does not say that searches

and seizures must be preceded by a warrant. Nor does it provide that all searches and seizures require probable cause. The Fourth Amendment dictates that people and their effects, etc., are secure only as against *unreasonable* searches and seizures, though the term "unreasonable" is not defined in the amendment. Moreover, nowhere does the amendment contain the words "legitimate expectation of privacy" or "exclusion of evidence." The Fourth Amendment is silent on the appropriate remedy for a violation of its mandates.

**Criminal lawyers should know which Fourth Amendment arguments have constitutional legitimacy, such as the need for probable cause for a warrant or that the warrant be particularized, and which arguments are the result of judicial interpretation.** The latter derive from case law that is subject to change and may differ from jurisdiction to jurisdiction. That being said, there are some fundamental principles of Fourth Amendment jurisprudence upon which one can rely, although only generally. (The challenge in *Dickerson v. United States*, 530 U.S. 428, 147 L. Ed. 2d 405, 120 S. Ct. 2326 (2000), to the giving of Miranda warnings necessary for the admission of statements--the bedrock of Fifth Amendment rights--offers a prime example of the uncertainty of even extremely well-established criminal due process rights.)

**Case law arising out of the Fourth Amendment's single sentence weaves a crazy quilt of search and seizure jurisprudence.** The four borders of that quilt triggering Fourth Amendment protections upon which the practitioner can ordinarily rely are: *government action, search or seizure, probable cause*, and *standing*. The fringe around the quilt is the *exclusionary rule*. The following are brief overviews of the four borders and the fringe.

## Warrant Requirement

**Ordinarily a search or seizure is not lawful unless preceded by a warrant issued by a neutral and detached magistrate, except in very specific and well-delineated exceptions.** The Warrant Requirement of the Fourth Amendment, also known as the Warrant Clause, requires warrants to be issued upon probable cause. The Warrant Clause of the Fourth Amendment does not require warrants to be issued in all searches and seizures and courts have held that searches and seizures are unreasonable unless executed pursuant to a warrant or well-established exception. See *Johnson v. United States*, 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369 (1948). There are numerous well-established exceptions including exigent circumstances, consent, plain view, etc.

**Government Action or Private Bank Employees Action**

**Government action is required to trigger the mandates of the Fourth Amendment.** If an ordinary citizen breaks into a home and takes contraband that is later turned over to the authorities, there is no governmental action and therefore no requirement of a warrant or probable cause. The interesting question for the criminal attorney is determining what constitutes government action. **For example**, if an otherwise private citizen, such as an airport employee, is acting as an agent of the federal government, his or her actions could

be considered government action, and, thus, trigger Fourth Amendment protections. See, e.g., *United States v. Doe*, 61 F.3d 107 (1st Cir. 1995) (nongovernmental airport personnel's administrative search triggered Fourth Amendment protections since the **FAA prescribes extensive administrative directives to airport personnel**).

## Searches and Seizures

The Fourth Amendment clearly protects against unreasonable *searches* and *seizures*. To trigger this protection, there must be an actual search or seizure. (NB: the Fourth Amendment does not apply to the search and seizure of non-resident aliens in foreign countries. See *United States v. Verdugo-Urquidez*, 494 U.S. 259, 108 L. Ed. 222,110 S. Ct. 1056 (1990).) **The terms "search" and "seizure," however, have taken on meanings beyond the obvious**.

**A *search* is legally defined as an invasion of an individual's legitimate expectation of privacy.** See *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). **This requires that an individual have a subjective expectation of privacy and that the expectation be an objectively reasonable one, meaning one that society is prepared to accept as reasonable. If contraband is left in plain view, abandoned in an alley or voluntarily given to a police officer, there is no reasonable expectation of privacy and hence no Fourth Amendment search.**

As with most legal terms, **the definition of search is complex and often confusing**. For example, when Sniffy the dog comes up to a piece of luggage and gives it the once-over with his nose, an ordinary citizen might view that as a type of search. The courts, however, have determined that it is not a search through a balancing test of the need for the information against the degree of intrusion. See *United States v. Place*, 462 U.S. 696, 703, 77 L. Ed. 2d 110, 118, 103 S. Ct. 2637, 2642 (1983). Paradoxically, a police officer's small shift of a stereo in order to record serial numbers even when the officer is legitimately on the premises can constitute a search. See *Arizona v. Hicks*, 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149 (1987).

## There are two different types of *seizures*: seizures of people and seizures of property.

"[T]he Fourth Amendment protects people, not places." *Katz*, 389 U.S. at 351, 19 L. Ed. 2d at 582, 88 S. Ct. at 511. The seizure of a person is determined by an objective standard that asks the question whether the person stopped by government officials reasonably believes he or she is **"free to leave."** See *Michigan v. Chesternut*, 486 U.S. 567, 100 L. Ed. 2d 565, 108 S. Ct. 1975 (1988). This may happen with or without formal arrest. Seizure of property occurs when a government official meaningfully interferes with a person's possessory interest in that property. See *United States v. Jacobsen*, 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). In plain English, it is a seizure of property when the police take the bag, impound the car, or voucher the purse.

## Probable Cause

**Probable cause** *is a level of suspicion necessary to obtain a warrant or affect an arrest.* Probable cause is generally required in order for the search or seizure to be reasonable. **Probable cause for a warrant requires a finding of a "fair probability" that contraband or evidence will be found in a particular place, and probable cause for an arrest requires a finding that an offense has been committed or is being committed.** See *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); *Beck v. Ohio, 379 U.S. 89*, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964). Probable cause is determined by a **"totality of the circumstances" analysis,** and is reviewed de novo by the appellate court, giving deference to the historical facts as found by the reviewing judge. See *Ornelas v. United States*, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996). Where less than a full seizure is made, such as a stop and frisk or a protective sweep, the requisite level of suspicion may be less than that required for probable cause-- mere "reasonable suspicion" to believe that criminal activity "may be afoot" can warrant the intrusion. See *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884 (1968).

## <u>Standing</u>

**Standing is the right to make a Fourth Amendment claim.** Fourth Amendment rights are personal and cannot be litigated vicariously. <u>**To make a Fourth Amendment claim, the movant must be the aggrieved party; her own rights must have been violated.**</u> For example, if Drug Enforcement Administration agents unlawfully break into a home and seize two kilograms of cocaine, this might trigger Fourth Amendment issues. But the defendant ordinarily has no standing to challenge the admissibility of the evidence unless the drugs were in a place or container in which she had a reasonable expectation of privacy. See *Rawlings v. Kentucky*, 448 U.S. 98, 104-05, 65 L. Ed. 2d 633, 641-42, 100 S. Ct. 2556, 2561 (1980). In other words, if it were not the defendant's home or she was not a legitimate overnight guest, she would probably lack standing to challenge the unlawful search and the introduction of the evidence at her trial.

Testimony given by Agent alias Gamboni shows she is falsely assuming unproven facts not in evidence before this Court, and misrepresenting facts to the Petitioner and to this Court by declaring statements based on purely <u>wrongful summary conclusions</u>. (See Declaration of Carla Gamboni attached to DOJ attorney's pleading.)

B. There must be a disclosure of the real/principal party of interest in all administrative or court tribunals for an entity to have standing to make claims and to sue.    RULE 17 OF THE FEDERAL Rules of Civil procedure (2005) provides:

**Rule 17.  Parties Plaintiff and Defendant; Capacity**

**(a) Real party in interest. Every action shall be prosecuted in the name of the real party in interest.** An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

**(b) Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.**

**In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except** (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., Sections 754 and 959(a).

**See following cases** Defendant may require action be brought in name of real party in interest. McWhirter v Otis Elevator Co. (1941, DC SC) 40 F Supp 11.

Thrust of Rule 17(a) is to provide defendant with protection against duplicate liability. Independent School Dist. v Statistical Tabulating Corp. (1973, ND Ill) 359 F Supp 1095, 17 FR Serv 2d 455.

While Rule 17(a) requires that every action shall be prosecuted in name of real party in interest, it is not necessary that action be brought in name of person who ultimately will benefit from any recovery. Honey v George Hyman Constr. Co. (1974, DC Dist Col) 63 FRD 443, 18 FR Serv 2d 1347; Mitsui & Co. v Puerto Rico Water Resources Authority (1981, DC Puerto Rico) 528 F Supp 768.

Rule 17 requires that action be brought by person who, according to governing substantive law, is entitled to enforce right. Passman v Companhia de Navegacao Maritima Netumar (1982, ED Pa) 544 F Supp 451, aff'd without op (1983, CA3 Pa) 725 F2d 669, 1984 AMC 1520.

Courts allow substitution under FRCivP 17(a) where to do so will prevent forfeiture and injustice. Taylor v Comcast Cablevision of Ark., Inc. (2003, ED Ark) 252 F Supp 2d 793, 14 AD Cas 277.

## 3. Purpose

**Purpose of rule requiring actions to be prosecuted in name of real party in interest is to enable defendant to avail himself of evidence and defenses he has against such real party in interest to assure finality of judgment, and protection against another suit by real party in interest on same matter. Celanese Corp. of America v John Clark Industries, Inc. (1954, CA5 Tex) 214 F2d 551.**

**Purpose of Rule 17** is to enable defendant to present defenses he has against real party in interest, to protect defendant against subsequent action by party actually entitled to relief, and to ensure that judgment will have proper res judicata effect, in view of its current purpose, to protect defendants against subsequent suits, Rule 17 will not bar suit by real party in interest which will have effect of preventing multiplicity of suits. Virginia Electric & Power Co. v Westinghouse Electric Corp. (1973, CA4 Va) 485 F2d 78, 17 FR Serv 2d 1103, cert den (1974) 415 US 935, 39 L Ed 2d 493, 94 S Ct 1450.

**Purpose of rule requiring that every action be prosecuted by real party in interest is to protect defendant from subsequent similar actions by one not party to initial action. Pacific Coast Agricultural Export Asso. v Sunkist Growers, Inc. (1975, CA9 Cal) 526 F2d 1196, 1975-2 CCH Trade Cases P 60617, cert den (1976) 425 US 959,**

48 L Ed 2d 204, 96 S Ct 1741.


Agent alias Gamboni has failed to verify, identify evidence of who is the
real/principal party of interest or how it/he/she was injured to have standing
in this instant litigation.  It must be unequivocally established by Agent alias
Gamboni by evidence before this court  that  petitioner has  a nexis,  legal
relationship by excontractu or exdelicto with the principal entity that Agent
alias Gamboni has failed by proof of clear and convincing evidence  to
disclose to him. Such willful neglect by Agent alias Gamboni certainly
would affect the rights and duties of the petitioner.  The petitioner as a
matter of right has a legal right to the notice of the name, date, time, venue,
terms and conditions of a non-disclosure by Agent alias Gamboni, of a
contract, or tort    See O.C.G.A. TITLE 9-2-2—no contract-no case-no tort-
no case-no agency-no case-no agent-no case


Petitioner has received written communications from various IRS employees
and Agent alias Gamboni.  In those communications the term "We" is used
repeatedly. No revenue agent has made an attempt to state, define, explain,
clarify, or describe the party witness testimony of facts by the term "We" is
referring to.

Under Federal law, agents represent principals.  Agent alias Gamboni
failed to identify, by documentary or parol testimony in evidence before this
court, or to the petitioner, what is the I.R.S., who is the I.R.S., when the
federal legislature created an agency known as "THE" I.R.S., "THE"
Internal Revenue Service, or if "THE" INTERNAL REVENUE SERVICE

is an agency of the UNITED STATES or THE UNITED STATES OF

AMERICA as enumerated IN 18 USC 1001 as a corporation of the U.S.A..

Petitioner request that the Court shall take mandatory judicial notice

pursuant to FRE Rule **201 and case list.**


Independent research, by scholars, have been made to find within Title 26 of

the United States Code, the Internal Revenue Code (**A SEPERATE CODE**

**FROM TITLE 26 USC** ) the section or sections which created an agency,

allegedly revealed by Agent alias Gamboni as the so-called "Internal

Revenue Service"; but the researchers have been unable to find any such

specific statutes or sections  in "THE" Internal Revenue Code .

In 1972, an Internal Revenue Manual ("IRM") 1100 was published in both the Federal
Register and the Cumulative Bulletin; see 37 Fed. Reg. 20960, 1972-2 Cum. Bul. 836. On
the very first page of this statement published in the Bulletin, the following admission
was made:

"By common parlance and understanding of the time, an office of the importance of the
Office of Commissioner of Internal Revenue was a bureau. The Secretary of the Treasury
in his report at the close of the calendar year 1862 stated that "The Bureau of Internal
Revenue has been organized under the Act of the last session". Also it can be seen that
Congress had intended to establish a Bureau of Internal Revenue, or thought they had,
from the act of March 3, 1863, in which provision was made for the President to appoint
with Senate confirmation a Deputy Commissioner of Internal Revenue "who shall be
charged with such duties in the bureau of internal revenue as may be prescribed by the
Secretary of the Treasury, or as may be required by law, and who shall act as
Commissioner of internal revenue in the absence of that officer, and exercise the
privilege of franking all letters and documents pertaining to the office of internal
revenue." In other words, "the office of internal revenue" was "the bureau of internal
revenue," and the act of July 1, 1862 is the organic act of today's Internal Revenue
Service."

This statement, which appears again in a similar publication appearing at 39 Fed. Reg.
11572, 1974-1 Cum. Bul. 440, as well as the current IRM 1100, **essentially admits that
Congress never created either the Bureau of Internal Revenue, or the Internal
Revenue Service.** To conclude that "it can be seen that Congress had intended to
establish a Bureau of Internal Revenue, or thought they had" (see IRM 1111.2 - Organic
Act) (Emphasis added) - is an admission that even the government itself cannot find

anything whatsoever which actually created either agency. **The only office created by the act of July 1, 1862,** was the Office of the Commissioner of Internal Revenue (not the Commissioner of Internal Revenue Service); neither the Bureau of Internal Revenue, nor the "Internal Revenue Service" was created by any of these acts.

**The DOJ attorney purports to be representing the United States in some instances and then the United States of America in other instances.** (See DOJ attorney's Motion and Memo, attached as Exhibit "A")  The DOJ attorney has failed to indicate if they (e.g. "US" and "USA") are the same entity or separate entities or whether either entity (if they are, in fact, separate entities) is the true/principal party of interest.  In any case, the DOJ attorney has <u>failed to reveal</u> in his motion <u>the real/principal party of interest</u>. One of the requirements in any case is the true/ principal party of interest must be stated as a matter of law and pursuant to Rule 17 of FRCP. Petitioner has not been provided this information.

C. **<u>There must be disclosure of credible/competent witnesses of fact.</u>** See FRE 601. Agent Alias Gamboni has <u>failed to disclose into the record</u> any **credible/competent witnesses of fact as** such as names identified by "WE" and/or identification of agent(s)/party(ies)) in this instant case.

Revenue Agent alias Gamboni and the DOJ attorney <u>failed to provide</u> in their declaration and/or motions a list of <u>credible/competent witnesses they have, with personal knowledge of facts that a debt is due and owing to an undisclosed principal party of interest.</u>  Petitioner has not been provided this information. Therefore Revenue Agent alias Gamboni failed to prove that she has personal knowledge of any material facts relevant to the petitioner or that as required by federal rules evidence rule 601.

**A prerequisite of admissible testimony is the witness' possession of personal knowledge of the matter about which testimony is given. The requirement of firsthand knowledge underlies much of the law of evidence and explains generally the proscriptions against opinion testimony and hearsay. In a sense, lack of personal or firsthand knowledge demonstrates the incompetence of the witness to testify as to particular facts.** Generally, the proponent of the witness must lay a foundation on the issue of personal knowledge by offering sufficient evidence to support a finding that the witness had firsthand knowledge of the subject matter of his testimony.

**Note that an expert witness need not have firsthand knowledge of the subject of his expert opinion.** The expert may rely on a hypothetical question drawn from facts proved by one with personal knowledge. In addition, though the proponent of an out-of-court statement must lay a foundation for the personal knowledge of an out-of-court declarant, the requirement of personal knowledge for the out-of-court declarant is suspended where the out-of-court statement is an admission of a party opponent under Rule 801.

D.  It is well established in American *Juris Prudence* that Governmental agents, agencies and/or employees thereof must operate only within the scope of their authority.

1. The IRS, Agent alias Gamboni, the DOJ and the DOJ attorney have <u>failed to disclose evidence in record of their authority</u> to intrude into the privacy, private affairs and peaceful ownership of property interest as they relate to Petitioner.  Therefore it violates common law rights to privacy and fundamental rights to be left alone along with possibly identity theft.

2.  Agent alias Gamboni is presumed by Petitioner to be a resident of Tennessee and is employed by the Internal Revenue Service in Nashville, Tennessee. (See Declaration of Carla Gamboni Page 1., Para. 1. attached to DOJ attorney's motion)

3.  Agent alias Gamboni failed to provide evidence on the record that petitioner owns property, has a legal relationship with the State of Tennessee or operates business in Tennessee as required under long arm jurisdiction of Tennessee or diversity jurisdiction. SEE LONG ARM-LAW-CASES.

4. The DOJ attorney and agent alias Gambini failed to provide evidence on the record that they have territorial jurisdiction over Petitioner pursuant to Fed. Executive Order 10289 establishing revenue districts that would be relative to petitioner. They also failed to provide truth of matter-asserted═ the seal of their office.

5. On more than one occasion, Petitioner provided an Affidavit of Authority to Agent alias Gamboni for her completion. Agent alias Gamboni <u>failed to provide one scintilla of authenticated evidence on the record that would prove her delegation of authority to contact-harass-trespass on the privacy, property</u> and tranquility of the petitioner and/or if she is a duly authorized agent of an undisclosed principal.

**Agent alias Gamboni <u>failed to provide authenticated evidence on the record that she has administrative tribunal or judicial jurisdiction to perform examination procedures relative to Petitioner.</u>**

6. Petitioner is not in receipt of any written verification that the Department of Justice (DOJ) and/ or the DOJ attorney has the authority to represent the "United States", or the "United States of America", or the IRS, or agents of the IRS, or more importantly the true/principal party of interest in these matters as they relate to Petitioner in United States District Courts. It is Petitioner's understanding attorneys for the DOJ have no powers of attorney to represent the "USA" and willful misrepresentation is a violation of the McDade Act at 28 U.S.C. 530B, which requires DOJ attorneys to obey State Bar disciplinary guidelines. See 18 USC 1001, and OCGA 16-10-20-false swearing.

Even if the DOJ attorney can verify he has authority to represent the unidentified-true/principal party of interest under FRCP 17, he still <u>has</u>

<u>failed to provide written verified proof that funds have been properly</u>
<u>appropriated</u> by the responsible governmental agency necessary for the DOJ
to perform these functions and more specifically in matters related to
Petitioner and in this particular case.

E.  It is well established in law that governmental agencies, agents, and
employees thereof must operate and deal with the public "in good faith."
Agent alias Gamboni, has <u>failed to operate "in good faith".</u>   Petitioner gave
IRS employees and Agent alias Gamboni, adequate intervals of time to
respond to all letters, **but in most instances there have been no responses.**
Agent alias Gamboni, showed lack of "good faith" by not responding and
has defaulted because of her negligent conduct.

   Petitioner notified Agent alias Gamboni that her silence would give clear
indication of **LACK of JURISDICTION and FRAUD** and any Acts on her
behalf without delegated authority are void according to Court rulings.  The
United States' Courts have ruled that, "Silence can be equated with fraud
where there is a legal or moral duty to speak, or where an inquiry left
unanswered would be intentionally misleading." **US v. Tweel**, 550 F.2d 297,
299.  **See also US v. Prudden, 424 F.2d 1021, 1032 and Carmine v.**
**Bowen, 64 A. 932.-**

**The US Courts have ruled that agency reps must have proper delegated**
**authority.** See **Cudahy Packing Co**. v. Holland, 315 U.S. 357, 62 S. Ct.
651 (1942); **United States v. Giordano**. 416 U.S. 505, 94 S.Ct. 1820
(1974); **United States v. Pees,** 645 F. Supp 687 (D. Col., 1986)

Agent alias Gamboni has failed to provide evidence on the record of any proof of her enforcement pocket commission that she has jurisdiction to enforce any law verified with the seal of her office.

Since Petitioner's initial contact with Agent alias Gamboni, she has gone through a last name change from Crosby to Gamboni. Petitioner and the Court have a duty to know who they are dealing with in Court proceedings as they relate to these matters and their related delegated authority. Therefore individuals dealing with an alleged public agent deserve to know what would cause an IRS agent to change his/her last name outside of marriage. See **Federal Crop Insurance Com. V. Merrill**, 332 U.S. 380, =DEALING 384, 68 S. Ct. 1, 3 (1947): **Dade Park Jockey Club v. Commonwealth**, 253 Ky. 314,69 S.W. 2d 363, 365 (1934); **Morris Plan Bank of Georgia v. Simmons**, 201 Ga. 157, 39 S.E. 2d 166, 175 (1946)

F. IRS summons must be issued under proper enforcement statutes and backed with the proper implementing regulations. Agent alias Gamboni and Group Manager Deborah Fitzpatrick issued Form 2039 under USC 7609 (i.e. 7609 summons) to several third parties relating to Petitioner. Upon Petitioner performing research into the validity of the 7609 Statute, Petitioner discovered 7609 summons get their authority from the implementing regulation at Code of Federal Regulations (CFR) Title 27, Part 70. Petitioner notes 27 CFR relates to Alcohol, Tobacco Products and Firearms. Petitioner has no dealings in Alcohol, Tobacco Products and Firearms. IRS employees operate under 26 CFR and have no authority or legal jurisdiction for issuing summons that obtain their authority under 27 CFR. **Whereby the Petitioner motions this Court to dismiss the**

## Claims of Agent alias Gamboni, with prejudice for lack of subject matter jurisdiction=FOR THE REASONS STATED SUPRA 27 CFR

Petitioner's private papers/information

Agent alias Gamboni has acknowledged she has already received information as it relates to Petitioner from various third parties and this is before any finalization of this case. Agent alias Gamboni testified the information is only to be used in a civil investigation.

Agent alias Gamboni , as Petitioner stated supra, failed to show on the record that she has personal knowledge and/or verified evidence to be used in any administrative  tribunal, or the power to invoke the jurisdiction of  a Federal or Georgia, Delaware, South Dakota, Florida, New York, Florida or an Illinois State Court against the petitioner.

Agent alias Gamboni has repeatedly stated no recommendation has been made to the DOJ. Therefore, let the IRS employees put in effect what they testified to the Court under oath which is required by Federal and state law.

Agent alias Gamboni has failed to state whether a future recommendation will be made to the DOJ.  Thusly, Agent alias Gamboni and the Examination Division of the IRS should be prohibited by the final order of this Court from converting the property of Petitioner to the custody of the CID or DOJ.

## Pro Se Litigants

Petitioner hereby invokes the powers and protection of the Common Law decision in **Haines v. Kerner** 404 U.S. 519 especially where they speak of the fact that Pro Se litigants may not be held to the same strict pleading standards as bar authorized attorneys and that Pro Se litigants have the right to submit evidence of their claims to the Court for jurisdiction; and that where the Court dismisses the pleadings the Court must provide curative instructions as to how these pleadings can be repaired and must give Pro se litigants leave to re-file the pleadings.

## Court Order

Petitioner claims the substantial due process right to have findings of fact and conclusions of law provided with any order of this court.  Under the Federal Rules of Civil Procedures, Rule 52, a decision must be rendered upon "Findings of fact and conclusions of law".

## CONCLUSION

Wherefore, Petitioner incorporates herein by reference his affidavit of fact, and prays the Court will establish that the summons is without legitimate or proper purpose and respectfully requests the Court to quash the IRS employee(s)' summons(es) directed to the third-party(ies) of records. Petitioner ask protection of the Court in that justice is served and Petitioner's rights are not trampled on, and that all pleadings do substantial justice and award for reimbursement of Petitioner's costs, fees and other equitable and justifiable relief as the court deems proper and just.

**CERTIFICATE OF SERVICE:**  I do hereby certify that on this date I properly sent a copy of this pleading to opposing attorney of record and related respondent(s).

This ___3rd___ day of August, 2005.

Respectively submitted,

GALEN R. HUSTON

Petitioner, Pro Se

2985 W. Roxboro Road

Atlanta, Georgia  30324

(404)237-1233



FCM

USPS FIRST CLASS MAIL ®

SHIP
TO:

WILMINGTON DE 19801

USPS DELIVERY CONFIRMATION

0391 2151 5160 0000 9999

U.S. POSTAGE
$3.22
FCM
3062A
06/03/05
02-14644
APC

0 lb 10.40 oz

U.S.M.S.
X-RAY.

Office of the Clerk
USDC
District of Delaware
Lockbox 18
844 King Street
Wilmington, Delaware 19801